UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALMA M. CAMERINI AND EUGENE J. CAMERINI,<br>        Plaintiffs,<br><br>vs.<br><br>FDIC INDYMAC FEDERAL BANK F.S.B.; INDYMAC BANK et al.,<br>        Defendants. | CASE NO. 08-06047 MMM (JWJx)<br><br>ORDER GRANTING FDIC'S MOTION TO SUBSTITUTE INTO ACTION AS A PARTY AND TO DISMISS FDIC INDYMAC FEDERAL BANK F.S.B.; DENYING MOTION TO STAY |

On July 11, 2008, the Office of Thrift Supervision ("OTS") closed IndyMac Bank and appointed the Federal Deposit Insurance Corporation ("FDIC") as the bank's receiver pursuant to 12 U.S.C. § 1821(c)(2)(A). The FDIC made deposit insurance determinations for accounts held at IndyMac and notified depositors of the determinations via letter. Some depositors have since filed actions in this district challenging the FDIC's deposit insurance determinations and/or allegedly wrongful acts by IndyMac Bank or its former employees. The FDIC seeks to substitute into this action as the real party in interest and to stay the matter pursuant to the Financial

Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA").[1]

## I. FACTUAL BACKGROUND

On September 16, 2008, Alma and Eugene Camerini filed a complaint against FDIC IndyMac Federal Bank FSB and IndyMac Bank.[2] Plaintiffs allege that on March 7, 2008, they opened a CD account at IndyMac's Northridge branch with a deposit of $200,000.00.[3] Plaintiffs assert that the account was to be a joint account held in the names of Eugene and Alma Camerini, with their son, Keith Camerini, named as beneficiary.[4] They further contend that on April 18, 2008, Eugene Camerini returned to the Northridge IndyMac branch to open an additional CD account with a deposit of $100,000.00.[5] The account was to be opened in Alma Camerini's name, with Eugene and Keith Camerini listed as beneficiaries.[6] Plaintiffs allege that Paul Bantet opened the account and assured Camerini that the funds would be fully insured by the FDIC.[7] Plaintiffs state that they would not have deposited the additional $100,000.00 had they not received this assurance.[8]

---

[1] See Notice of Motion and Motion by Defendant Federal Deposit Insurance Corporation as Receiver for IndyMac Bank, F.S.B., to Substitute as a Party, to Dismiss IndyMac Federal Bank and For a Stay; Memorandum of Points and Authorities in Support Thereof ("FDIC Motion"), Docket No. 12 (Oct. 28, 2008). On November 17, 2008, the Camerinis filed an opposition to the FDIC's motion. (See Objection to Notice of Motion by Defendant Federal Deposit Insurance Corporation as Receiver for IndyMac Bank, F.S.B. For a Stay ("Camerini Opposition"), Docket No. 16 (Nov. 17, 2008).)

[2] See Complaint, Docket No. 1 (Sept. 16, 2008).

[3] *Id*. at 1.

[4] *Id*.

[5] *Id*. at 1-2.

[6] *Id*. at 2.

[7] *Id*.

[8] *Id*.

2

On July 21, 2008, the FDIC notified plaintiffs that they would receive a receiver's certificate in the amount of $53,527.17.[9]  The letter stated:

> "If you have uninsured deposits, as established by the FDIC's insurance determination, you automatically have a claim for such funds.  **In the event you disagree with the FDIC's determination with respect to your uninsured deposits, you may seek a review of the FDIC's determination in the United States District Court for the federal judicial district where the principal place of business of the Failed Institution [IndyMac] was located.  You must request this review no later than 60 days after the date of this letter.**"[10]

On July 30, 2008, the Camerinis received a dividend distribution check from the FDIC in the amount of $26,763.59.[11]

Plaintiffs allege that they became aware that their $100,000.00 CD was not fully FDIC-insured only after visiting the Northridge IndyMac branch on September 3, 2008.[12]  Shortly thereafter, plaintiffs filed this action.  Plaintiffs maintain that they relied in good faith on the assurances of IndyMac representatives and that the full amount deposited should have been

---

[9]"Notice of Allowance of Claim," letter from the FDIC to Alma and Eugene Camerini, July 21, 2008.  A copy of this letter is attached to the Camerini Opposition.

[10]*Id.* (emphasis original).

[11]Complaint at 2.  The Camerinis have not yet cashed this check because they are uncertain whether it should be included on their 2008 income tax return.  (*Id.*)

[12]*Id.* at 3 ("On September 3, 2008 . . . we went to the Indymac bank in Northridge . . . We spoke to Vita Owezzarczak-Jay personally and I wanted to know why the FDIC had decided we were insured for [only] 53,000 dollars.  She said that if the additional 100,000 dollars had been written up differently we would have been fully insured.  Why wasn't it written differently when Paul Barlet . . . assured my husband that it was fully insured after he had checked with Vita on the day we opened the additional account?  Vita then called someone at the FDIC where she was told that since I had signed a signature card, she was not responsible for the uninsured account amount").

3

insured.[13]

On September 30, 2008, the FDIC sent the Camerinis a letter captioned "Notice to Discovered Creditor – Proof of Claim."[14] The letter informed the Camerinis that the FDIC had previously published a notice to IndyMac customers in the Los Angeles Times and the Wall Street Journal warning that claims against IndyMac had to be filed by the Claims Bar Date, October 14, 2008.[15] Although the claims bar date had not yet passed, the letter represented that it had.[16] The letter stated that the FDIC could consider late claims under certain circumstances,[17] and provided instructions for filing a late proof of claim.[18]

---

[13] *Id.* at 3-4 ("We as depositors sincerely believe that when we put our trust and act in good faith with a financial institution we are entitled to be assured by the bank's agents that the FDIC insurance amount is fully guaranteed. It is their expertise that we are relying upon and if there are changes made from the original agreements, we should be given an opportunity to bring said accounts up to date").

[14] "Notice to Discovered Creditor – Proof of Claim," letter from the FDIC to Alma and Eugene Camerini, September 30, 2008. A copy of this letter is attached to the Camerini Opposition.

[15] *Id.*

[16] *Id.* ("Although the Claims Bar Date has passed . . .").

[17] *Id.* ("[U]nder federal law the [FDIC] may consider claims filed after the Claims Bar Date if: 1) the claimant did not receive notice of the appointment of the [FDIC as receiver] in time to file a claim, AND 2) the claim is filed in time to permit payment of the claim. 12 U.S.C. [§] 1821(d)(5)(C). Nothing in this letter is intended to imply that the [FDIC] has extended the Claims Bar Date").

[18] *Id.* ("However, for the [FDIC] to consider your claim, you must prove to the [FDIC]'s satisfaction that you did not have knowledge of the appointment of the [FDIC as receiver] in time to file a claim before the Claims Bar Date. Therefore, you must do ALL of the following: - Complete the enclosed Proof of Claim Form - Sign the Proof of Claim Form - Provide supporting documentation both regarding your claim and your lack of knowledge of the appointment of the [FDIC as receiver] (for example, evidence that someone was on active military duty stationed overseas at the time of the appointment of the [FDIC as receiver]). Please submit the properly completed Proof of Claim Form and the supporting documentation to the [FDIC] on or before **December 29, 2008**. You must return the properly filed Proof of Claim Form, along with the supporting documentation, to the following address . . .").

The Camerinis contend that they have been contacted several times by FDIC representatives regarding the need to complete the administrative claims process and the fact that they have not filed a claim form.[19] They believe they have a valid claim, but do not indicate they have filed a proof of claim.

## II. DISCUSSION

### A. Substitution of the FDIC

The FDIC contends that, as IndyMac's receiver, it is the real party in interest in suits arising out of the bank's failure. Consequently, it seeks to be substituted in place of IndyMac as the defendant in this action.

Rule 17(a) of the Federal Rules of Civil Procedure provides that "[a]n action must be prosecuted in the name of the real party in interest." FED.R.CIV.PROC. 17(a). When OTS appointed the FDIC to act as IndyMac's receiver,[20] the FDIC succeeded to "all rights, titles,

---

[19] See Camerini Opposition at 2 ("On September 16, 2008, Plaintiffs went to the U.S. Court in Los Angeles where they were told that they had to file a civil action in order to qualify for the judicial review. Subsequently Plaintiffs have been contacted several times by FDIC representatives assigned to the Indymac section both in claims and general information. Plaintiffs have been told at different times that they never filed a claim form and therefore must go through the administrative claims process. These FDIC representatives seem to not want to understand that the Plaintiffs do have a valid claim number").

[20] The FDIC asks that the court take judicial notice of the Office of Thrift Supervision order appointing it as IndyMac's receiver. (See Office of Thrift Supervision, Order No. 2008-24 ("OTS order") (July 11, 2008), attached to Request for Judicial Notice, Docket No. 13 (Oct. 28, 2008).) Under Rule 201 of the Federal Rules of Evidence, the court must take judicial notice if requested by a party and supplied with the necessary information, so long as the judicially noticed fact is not subject to reasonable dispute (i.e., it is either already generally known within the territorial jurisdiction of the trial court, or it is a fact which can be accurately and readily ascertained by resort to sources whose accuracy cannot reasonably be questioned). FED.R.EVID. 201.

The OTS order is a record or report issued by an administrative body. Such records are a proper subject of judicial notice. See, e.g., *Interstate Nat'l Gas Co. v. Southern California Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1954) ("We may take judicial notice of records and reports of administrative bodies," citing cases); *U.S. ex rel. Dingle v. BioPort Corp.*, 270 F.Supp.2d 968, 972 (W.D. Mich. 2003) ("Public records and government documents are generally considered 'not to be subject to reasonable dispute'" (citation omitted)). Accordingly, the court takes judicial

5

powers and privileges" previously held by IndyMac, and took over the assets and operations of the bank. See 12 U.S.C. § 1821(d)(2)(A)(i) ("The [FDIC] shall, as conservator or receiver, and by operation of law, succeed to – (i) all rights, titles, powers, and privileges of the insured depository institution [IndyMac], and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution"); *id.*, § 1821(d)(2)(B)(i) ("The [FDIC] may (subject to the provisions of section 1831q of this title), as conservator or receiver – (i) take over the assets of and operate the insured depository institution [IndyMac] with all the powers of the members or shareholders, the directors, and the officers of the institution and conduct all business of the institution").

Because the FDIC has succeeded to all of IndyMac's assets and liabilities, the FDIC as receiver must be substituted for IndyMac as the proper defendant in this action.[21]   See

---

notice of the OTS order.

[21] The FDIC has also moved to dismiss plaintiffs' claims against FDIC IndyMac Federal Bank F.S.B. ("IFSB"), in its role as conservator. The FDIC asserts that the IFSB played no role in the FDIC's insurance determination regarding plaintiffs' accounts; that the conservator does not hold any uninsured deposits; and that the FDIC receiver is alone the real party in interest. (FDIC Motion at 2-3.)  Plaintiffs' complaint does not allege that any specific acts or omissions were committed by the IFSB conservator.

FIRREA distinguishes between the FDIC as conservator and the FDIC as receiver. The conservator is to "take such action as may be . . . necessary to put the insured depository institution in a sound and solvent condition; and . . . appropriate to carry out the business of the institution and preserve and conserve the assets and property of the institution." 12 U.S.C. § 1821(d)(2)(D). The receiver has "additional powers": these include placing the insured depository institution in liquidation and realizing upon its assets, 12 U.S.C. § 1821(d)(2)(E), as well as determining claims, 12 U.S.C. § 1821(d)(3)-(8). See also, e.g., *Gibralter Financial Corp. v. Federal Home Loan Bank Bd.*, No. CV 89 3489 WDK (GHKx), 1990 WL 394298, *9 n. 7 (C.D. Cal. June 15, 1990) ("That receivers and conservators are under different obligations with respect to the distribution of assets is not surprising given their respective functions. Whereas the role of the receiver is to effect a fair and orderly dissolution of an institution, the purpose of a conservator is to maintain the viability of a troubled institution and place it in a sound and solvent condition," citing 12 U.S.C. § 1821(d)(2)(D)(i)).

Under FIRREA, the receiver is the entity authorized to determine claims related to the failed bank. See 12 U.S.C. § 1821(d)(3) ("Authority of receiver to determine claims – (A) In general – The [FDIC] may, as *receiver*, determine claims in accordance with the requirements of this subsection and regulations prescribed under [§ 1821(d)(4)]" (emphasis added)).  Thus, the

6

FED.R.CIV.PROC. 25(c) ("If an interest is transferred [as here, from IndyMac to the FDIC as receiver], the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party"); see also *Wachovia Bank, N.A. v. Vorce*, No. 1:07-cv-847, 2007 WL 3471299 (W.D. Mich. Nov. 13, 2007) ("As the duly appointed receiver for NetBank FSB, the FDIC has requested leave . . . to be substituted as a party defendant in the place of the failed bank. By operation of FIRREA, the FDIC as receiver succeeds to all the rights, titles, powers, and operations of the failed bank. 12 U.S.C. § 1821(d)(2). As such, the FDIC as receiver is entitled . . . to be substituted as party defendant in the place of the failed bank under Rule 25(c)"); *Bank of New England, N.A. v. Callahan*, 758 F.Supp.61, 62 (D.N.H. 1991) ("In this action, FDIC as Receiver succeeded to all assets and liabilities of BNE when appointed by the Comptroller of the Currency. New BNE purchased some assets and none of the liabilities, which remain with FDIC as Receiver. Accordingly, the court hereby grants the Motion to Substitute filed by New BNE and FDIC as Receiver"); *Fleet Bank of Maine v. Druce*, 763 F.Supp. 670, 671 (D. Me. 1991) (noting that the FDIC had assumed the failed bank's role as plaintiff in an action seeking a declaration that the bank had properly dishonored a letter of credit and the bank's role as counterdefendant on a claim

---

FDIC as receiver is the real party in interest here, and the FDIC's motion to dismiss the IFSB conservator as a defendant is granted. See, e.g., *St. Hilaire and Associates, Inc. v. FDIC*, No. Civ. 92-511-SD, 1995 WL 19095, *5 (D.N.H. Jan. 17, 1995) ("Plaintiffs, as alleged creditors of HomeBank FSB, were notified by letter dated January 14, 1993, that any claims they had against the failed bank must be presented to RTC as receiver pursuant to 12 U.S.C. § 1821(d). . . . Said notification was consistent with FIRREA, which provides in relevant part that only the RTC *as receiver* has authority to determine claims against the failed bank. See 12 U.S.C. § 1821(d)(3). . . . The claims asserted by plaintiffs in this action are based on the alleged conduct of HomeBank FSB's officers and agents before the bank was declared insolvent and RTC was appointed as its receiver. There is no evidence before the court that RTC as conservator of the newly formed HomeBank FSA assumed any liability for the acts of HomeBank FSB's agents prior to said bank's failure. Accordingly, the court finds that RTC as conservator of HomeBank FSA is not liable for the claims set forth in plaintiffs' complaint. . . . Instead, the evidence shows that said claims should have been brought, if at all, against RTC in its capacity as receiver for HomeBank FSB" (emphasis original, citation omitted)).

by the holder of the letter of credit challenging the dishonor).[22]

B. **Judicial Review of Claims Arising Out of the IndyMac Failure**

1. **Types of Claims**

In the wake of IndyMac's collapse, there are at least two types of claims depositors can assert against the FDIC. Although the court makes no determination as to which type of claim(s) plaintiffs assert, a review of the manner in which various kinds of claims are handled under FIRREA will assist in assessing the FDIC's stay requests.

First, depositors can dispute the FDIC's deposit insurance determination respecting their IndyMac account(s). The court's review of such a decision is limited by statute to examining whether the FDIC's determination was arbitrary, capricious, an abuse of discretion, or otherwise

---

[22]Because the FDIC is an agency of the United States government sued in its official capacity, it has 60 days to respond to the complaint. See FED.R.CIV.PROC. 12(a)(2) ("The United States, a United States agency, or a United States officer or employee sued only in an official capacity must serve an answer to a complaint, counterclaim, or crossclaim within 60 days after service on the United States attorney"); see also *Rauscher Pierce Refsnes, Inc. v. FDIC*, 789 F.2d 313, 316 (5th Cir. 1986) ("The interest of the United States government in the FDIC is significant and critical. In no way can the interest of the United States in the FDIC be termed as 'incidental.' The sixty day time period within which to answer is an additional protection that obviously should be afforded the FDIC in discharging its statutory duties. In the absence of such protection, the functioning of the United States through the FDIC could severely be impaired. Clearly the FDIC is and should be an agency of the United States government as that term is defined in Rule 12(a) of the Federal Rules of Civil Procedure"). This 60 day period begins to run from the date of proper service on the agency.

The Camerinis have not yet effected proper service on the FDIC. Service of process on an agency or officer of the United States (such as the FDIC) must comply with Rule 4(i) of the Federal Rules of Civil Procedure. Under Rule 4(i), a plaintiff suing a federal agency must (1) personally service the United States Attorney for the district in which the action is brought, or his designee, or send a copy of the summons and complaint by registered or certified mail to the civil-process clerk at the United States Attorney's office; (2) send a copy of the summons and complaint by registered or certified mail to the Attorney General in Washington, D.C.; *and* (3) send a copy of the summons and complaint by registered or certified mail to the agency defendant [here, to the FDIC c/o Robert E. Feldman, Executive Secretary, Federal Deposit Insurance Corporation, 550 17th Street, N.W., Washington, D.C. 20429]. FED.R.CIV.PROC. 4(i)(1), (2). Service must be effected on all defendants **within 120 days** after the complaint is filed, or the court may dismiss the action without prejudice. FED.R.CIV.PROC. 4(m). Plaintiffs are therefore directed to effect proper service on the FDIC within 120 days of September 16, 2008.

not in accordance with the law. See 12 U.S.C. § 1821(f)(4) ("A final determination made by the [FDIC] regarding any claim for insurance coverage shall be a final agency action reviewable in accordance with [5 U.S.C. § 706], by the United States district court for the Federal judicial district where the principal place of business of the depository institution is located"); 5 U.S.C. § 706 ("To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall – . . . (2) hold unlawful and set aside agency action, findings, and conclusions found to be – (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. . .").

Depositors may also have claims related to acts or omissions by IndyMac or its employees that occurred *before* the bank's failure, and that relate to the classification and insurance eligibility of their deposits. To assert this type of claim, the depositor must *first* exhaust the administrative claims procedure set forth in the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. §§ 1821(d)(3) - (8). Specifically, individuals wishing to dispute alleged errors by IndyMac or former IndyMac employees must file a proof of claim *with the FDIC* within a specified period of time.[23] Once a proof of claim is filed, the FDIC has 180 days to allow or disallow the claim, and notify the claimant of its decision. See 12 U.S.C. § 1821(d)(5)(A)(i) ("Before the end of the 180-day period beginning on the date any claim against a depository institution is filed with the Corporation as receiver, the Corporation shall determine whether to allow or disallow the claim and shall notify the claimant of any determination with respect to such claim").

If the FDIC disallows an individual's § 1821(d)(5)(A)(i) claim, or if the 180-day review period expires without a decision by the FDIC – whichever occurs earlier – a claimant may take one of two courses of action. See, e.g., *Helm v. Resolution Trust Corp.*, 43 F.3d 1163, 1165 (7th

---

[23]As noted, the FDIC's September 30, 2008 letter stated that the Claims Bar Date for IndyMac depositors was October 14, 2008, and that the deadline for depositors to petition the FDIC to review a late proof of claim would be December 29, 2008.

Cir. 1995) ("[Resolution Trust Corporation][24] actions are largely governed by the Financial Institutions Reform, Recovery and Enforcement Act (FIRREA). . . . The RTC may find in favor of the claimant, or it may 'disallow' the claim, i.e., reject it. 12 U.S.C. § 1821(d)(5)(D). . . . FIRREA generally forbids federal judicial review of RTC actions. 'Except as otherwise provided in this subsection, no court shall have jurisdiction over . . . any claim relating to any act or omission of . . . the [RTC] as receiver." 12 U.S.C. § 1821(d)(13)(D). FIRREA further explicitly forbids judicial review of RTC disallowances made pursuant to § 1821(d)(5)(D). 'No court may review the [RTC's] determination . . . to disallow a claim.' 12 U.S.C. § 1821(d)(5)(E). However, FIRREA loosens the prohibition on federal jurisdiction in two circumstances: where the RTC has already reviewed its own disallowance, and where the claimant files a fresh suit in federal district court. But *unless a claimant takes one of these two options*, § 1821(d)(5)(E) bars any federal jurisdiction over a disallowed claim" (emphasis added)); see also *Office & Professional Employees Int'l Union, Local 2 v. FDIC*, 962 F.2d 63, 65 (D.C. Cir. 1992) ("A party dissatisfied with [the] FDIC's initial determination is given the choice between seeking administrative review (in which case the [FDIC's] second instance decision is subject to court challenge under the familiar 'arbitrary and capricious' standard) and proceeding directly to district court. [12 U.S.C. §§] 1821(d)(6), (7)").

      The claimant's first option is to request that the FDIC internally review its decision to

---

[24]The Resolution Trust Corporation ("RTC") was the statutory predecessor to the FDIC. See, e.g., *Resolution Trust Corp. v. First American Bank*, 155 F.3d 1126, 1127 (9th Cir. 1998) (stating that the RTC was the FDIC's predecessor). The RTC was abolished in 1995, and replaced by the FDIC. See 12 U.S.C. § 1441a(m)(1) ("The [RTC] shall terminate not later than December 31, 1995. If at the time of its termination, the [RTC] is acting as a conservator or receiver, the Federal Deposit Insurance Corporation shall succeed the [RTC] as conservator or receiver"); see also *Post v. FDIC*, No. 96-55116, 1996 WL 717094, *1 n.* (9th Cir. Dec. 6, 1996) (Unpub. Disp.) ("Pursuant to the Resolution Trust Corporation Completion Act, 12 U.S.C. § 1441a(m)(1), the Resolution Trust Corporation ('RTC') and its functions statutorily succeeded by the Federal Deposit Insurance Corporation ('FDIC'). Accordingly, the FDIC is substituted for the RTC as the defendant in this action"). Since the FDIC is governed by FIRREA, just as the RTC was, case law interpreting this statute during the period the RTC was in existence is instructive.

10

disallow the administrative claim. If the FDIC agrees to undertake an internal review, it will hold a hearing and make a final determination. Once the FDIC has completed its review, the claimant may – if still unhappy with the FDIC's determination – file suit in federal district court seeking judicial review. See 12 U.S.C. § 1821(d)(7)(A) ("If any claimant requests review under this subparagraph in lieu of filing or continuing any action under paragraph (6) and the [FDIC] agrees to such request, the [FDIC] shall consider the claim after opportunity for a hearing on the record. The final determination of the [FDIC] with respect to such claim shall be subject to judicial review under [5 U.S.C. § 706]"); see also *Helm*, 43 F.3d at 1165 ("First, if the RTC has itself reviewed a disallowance and again denied a claim, the federal courts may then review the disallowance. The claimant must request internal RTC review, and if the RTC agrees to the request, it will hold a hearing and make a determination. 12 U.S.C. § 1821(d)(7)(A). Only if that point is reached, and the complainant is still dissatisfied with the result, may the claimant then file suit in federal district court asking for judicial review of the RTC's disallowance. *Id.* The Administrative Procedure Act [5 U.S.C. § 706] would govern such judicial review").

A claimant must request administrative review of the disallowed claim within 60 days of the FDIC's final determination. See 12 U.S.C. § 1821(d)(6)(A) ("Before the end of the 60-day period beginning on the earlier of – (i) the end of the period described in paragraph (5)(A)(i) with respect to any claim against a depository institution for which the [FDIC] is receiver; or (ii) the date of any notice of disallowance of such claim pursuant to paragraph (5)(A)(i), the claimant may request administrative review of the claim . . .").

The claimant's second option is to proceed directly to federal district court. See 12 U.S.C. § 1821(d)(6)(A) (". . . the claimant may . . . file suit on such claim . . . in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located . . ."); *Helm*, 43 F.3d at 1165 ("Second, the dissatisfied claimant may avoid further dealing with the RTC. He may return to square one, and, under 12 U.S.C. § 1821(d)(6)(A), file suit against the RTC in federal district court, not for review of the RTC's disallowance, but for relief on the underlying claim. Such a suit ignores the RTC's disallowance and allows *de novo* examination of the claim by the federal courts. FIRREA

11

explicitly gives the federal courts jurisdiction over such a suit. 12 U.S.C. § 1821(d)(6)(A)"); *Starkman v. Resolution Trust Corp.*, No. 93 C 5850, 1994 WL 577233, *4 (N.D. Ill. Oct. 18, 1994) ("Likewise, the Second and Third [C]ircuits have interpreted these provisions to merely require that a claimant first present its case to the RTC under the administrative procedures established by FIRREA before seeking relief in the federal courts. *Resolution Trust Corp. v. Elman*, 949 F.2d 624, 627 (2d Cir. 1991); *Rosa v. Resolution Trust Corp.*, 938 F.2d 383, 388 (3d Cir. 1991). Based upon the language of the statute and the persuasive authority cited, this court finds that Starkman properly exhausted his administrative remedies by presenting his claim to the RTC, and then filing suit within sixty days of the disallowance of the claim"); *Bueford v. Resolution Trust Corp.*, 991 F.2d 481, 486 (8th Cir. 1993) ("FIRREA is not a model of statutory clarity. . . . However, a reading of the statute as a whole clearly spells out when and how judicial review is available. We are particularly persuaded by the interpretation advanced by other circuits that section 1821(d)(5)(E) directs the district courts to analyze claims against failed banking institutions de novo," citing cases); *Office & Professional Employees Int'l Union, Local 2*, 962 F.2d at 65 ("FIRREA is strict in its demand that claimants first obtain an administrative determination. Congress was concerned, however, about the constitutionality of entrusting to executive agency adjudication claims that ordinarily lie within the province of the courts. Accordingly, Congress instructed district courts to 'determine' claims against failed banks *de novo*, rather than merely to review, for error or abuse, [the] FDIC's initial decisions. See [18 U.S.C.] § 1821(d)(5)(E), (6), (7); H.R. Rep. No. 54, 101st Cong., 1st Sess., pt. 1, at 418-19, reprinted in 1989 U.S.C.C.A.N. 86, 214-15"); see also *Nants v. FDIC*, 864 F.Supp. 1211, 1217 (S.D. Fla. 1994) ("The term 'de novo' means 'a fresh, independent determination of the matter at stake; the court's inquiry is not limited to or constricted by the administrative record, nor is any deference due the agency's conclusion.' *Doe v. United States*, 821 F.2d 694, 697-98 (D.C. Cir. 1987). In making this fresh and independent determination, therefore, the Court may consider all of the evidence presented at trial, regardless of its presentation to the FDIC during the claims review process").

    A claimant choosing this second option must file suit within 60 days. See 12 U.S.C.

1  § 1821(d)(6)(A) ("Before the end of the 60-day period beginning on the earlier of – (i) the end of
2  the period described in paragraph (5)(A)(i) with respect to any claim against a depository
3  institution for which the [FDIC] is receiver; or (ii) the date of any notice of disallowance of such
4  claim pursuant to paragraph (5)(A)(i), the claimant may . . . file suit on such claim . . .").

5  If the individual claimant does not request administrative or judicial review within 60 days
6  as required by the statute, the FDIC's determination regarding the claim will be final, and the
7  claimant will have no further rights or remedies. See 12 U.S.C. § 1821(d)(6)(B) ("If any claimant
8  fails to – (i) request administrative review of any claim . . . or; (ii) file suit on such claim) . . .
9  before the end of the 60-day period described in subparagraph (A), the claim shall be deemed to
10 be disallowed (other than any portion of such claim which was allowed by the [FDIC] receiver)
11 as of the end of such period, such disallowance shall be final, and the claimant shall have no
12 further rights or remedies with respect to such claim").

13 Regardless of the option selected, the district court has no jurisdiction to adjudicate claims
14 alleging acts or omissions by the failed bank until depositors complete the administrative claims
15 procedure. See 12 U.S.C. § 1821(d)(13)(D) ("Except as otherwise provided in this subsection,
16 no court shall have jurisdiction over – (i) any claim or action for payment from, or any action
17 seeking a determination of rights with respect to, the assets of any depository institution for which
18 the [FDIC] has been appointed receiver, including assets which the [FDIC] may acquire from
19 itself as such receiver; or (ii) any claim relating to any act or omission of such institution or the
20 [FDIC] as receiver"); see also, e.g., *Feigel v. FDIC*, 935 F.Supp. 1090, 1096 (S.D. Cal. 1996)
21 ("FIRREA has been interpreted by the Ninth Circuit as requiring parties to exhaust administrative
22 remedies prior to filing or refiling claims in district court. See *Intercontinental Travel Marketing,*
23 *Inc. v. FDIC*, 45 F.3d 1278, 1282 (9th Cir. 1994) ('*ITM*') (no jurisdiction exists if a claimant does
24 not exhaust FIRREA's administrative remedies) (citing *Henderson v. Bank of New England*, 986
25 F.2d 319, 320-21 (9th Cir.) cert. denied, 510 U.S. 995 (1993)). Failure to timely exhaust
26 administrative remedies results in the loss of jurisdiction over certain claims which otherwise
27 could be raised in district court. Thus, the Ninth Circuit has noted that a district court losses
28 jurisdiction if 'the claimant fails to file a timely administrative claim.' *ITM*, 45 F.3d at 1284").

**2.      Legal Standard Governing Stays In Cases Asserting These Types of Claims**

### a.      Depository Insurance Determinations

When the FDIC is appointed as the receiver for an insured depository institution like IndyMac, it may ask the district court to stay all legal actions for a period not to exceed 90 days. See 12 U.S.C. § 1821(d)(12)(A)(ii) ("After the appointment of a conservator or receiver for an insured depository institution, the conservator or receiver may request a stay for a period not to exceed – (ii) 90 days, in the case of any receiver, in any judicial action or proceeding to which such institution is or becomes a party"). If such a request is made, the district court is *required* to grant the stay. See 12 U.S.C. § 1821(d)(12)(B) ("Upon receipt of a request by any conservator or receiver pursuant to subparagraph (A) for a stay of any judicial action or proceeding in any court with jurisdiction of such action or proceeding, the court shall grant such stay as to all parties"); see also *FDIC v. Lacentra Trucking, Inc.*, 157 F.3d 1292, 1307 (11th Cir. 1998) (Tjoflat, dissenting) ("The statute does provide for a stay of ninety days in any action that is pending at the time of the receiver's appointment; such a stay is to be granted automatically by the court upon a motion by the receiver. See 12 U.S.C. § 1821(d)(12)(A) & (B)"); *Wachovia Bank*, 2007 WL 3471229 at *2 ("In light of this clear language [in § 1821(d)(12)], the majority of federal courts that have faced the issue hold that a stay is mandatory and must be granted upon timely request by the FDIC," citing, *inter alia*, *Praxis Properties*); *Prince George Joint Venture v. Sunbelt Savings, F.S.B.*, 744 F.Supp. 133, 135-36 (N.D. Tex. 1990) (declining to follow district courts that had read an immediacy requirement or imminent injury exception into § 1821(d)(12), and holding that "[a] stay is mandatory when properly requested in an action covered by § 1821(d)(12)").

The timing of the FDIC's stay request under § 1821(d)(12) is important, however; the statute requires courts to stay pending legal actions only if requested within 90 days of the receiver's *appointment*. See, e.g., *Praxis Properties, Inc. v. Colonial Savings Bank, S.L.A.*, 947 F.2d 49, 52 (3d Cir. 1991) ("On the merits, we hold that if the receiver of a depository institution makes its request under section 1821(d)(12)(A)(ii) within 90 days of its appointment, the district

court then *must* stay the litigation until those 90 days after appointment has expired. That is, the district court has no discretion to decline a section 1821(d)(12) stay request based on alleged irreparable harm to other parties, but the court should not grant a section 1821(d)(12) stay lasting beyond 90 days after the receiver's appointment"); *id.* at 67-71 (discussing the timing of stay requests and the permissible length of any stay following exhaustive review of legislative history of FIRREA and concluding "[w]e are therefore confident that Congress intended a receiver request its section 1821(d)(12) stay within 90 days of its appointment," and noting that the receiver "is entitled to a 90 day stay if it seeks the stay immediately after its appointment . . . If [the receiver] fails to request a stay for 30 days after its appointment, its stay remains mandatory but will only last the remaining 60 days of the 90-day period following appointment. Where, as here, more than 90 days have passed since [the receiver's] appointment, it is not entitled to a stay under section 1821(d)(12)").

### b. Stays in Cases Raising Claims Subject to the Administrative Claims Process

If an individual has filed a proof of claim with the FDIC based on alleged acts or omissions by IndyMac prior to its failure, the district court must wait until the FDIC has either disallowed the claim or the 180-day claim review period has expired, whichever is earlier. This is because, as noted, the district court lacks jurisdiction over these claims until the FDIC's administrative review process is concluded. See 12 U.S.C. § 1821(d)(13)(D). As a result, the court must stay legal actions based on such claims until one or the other of these deadlines has passed.

### 3. Whether to Stay Plaintiffs' Claims

There is no evidence in the record that plaintiffs have filed a proof of claim seeking FDIC review of IndyMac's alleged acts or omissions under § 1821(d)(5). As a result, the FDIC is not presently entitled to a 180-day stay under § 1821(d)(13)(D). The FDIC may request such a stay in the future if it submits evidence that plaintiffs have filed a proof of claim; upon receipt of such a filing, the court will stay the matter for up to 180 days so that the FDIC can complete an

administrative review of plaintiffs' allegations.[25] Alternatively, as the court has set forth in some

---

[25]On the afternoon of November 21, 2008, the FDIC filed a "Notice of Withdrawal" of its motion for stay in seven of eight cases on calendar for November 24, 2008. ("Withdrawal Notice," Nov. 21, 2008.) The FDIC asserts that, following further review of pending IndyMac depositor cases, it has determined that the majority of complaints "simply seek a review of the deposit insurance determination made by the FDIC in its Corporate capacity and . . . [do] not alleg[e] claims against the FDIC as Receiver for IndyMac Bank, F.S.B." (*Id.* at 1-2.) As a result, the FDIC states, it has "withdraw[n] the portion of its motion requesting a 180-day stay of this case." Additionally, it asserts that it intends to "notify all Plaintiffs who were sent a Notice to File a Receivership Claim and Proof of Claim forms that they no longer need to proceed through the FDIC's administrative claims process to assert their claims for deposit insurance." (*Id.* at 2.)

The only exceptions the FDIC identifies are four cases in which plaintiffs seek "consequential damages" – i.e., damages caused by fraud or emotional distress damages. (*Id.* at 4.) These are *Misic*, Case No. 08-06073; *Soltan*, Case No. 08-06397; *Coleman*, Case No. 08-06546; and *Tartaglino*, Case No. 08-07256. The FDIC states that, since "[c]laims for funds beyond recovery of deposits are subject to the administrative claims process," these four cases "are best characterized as claims against the FDIC Receiver in addition to . . . claims for deposit insurance against the FDIC in its Corporate capacity." (*Id.*)

As respects the remainder of the cases pending, the FDIC maintains that no administrative claims process is required. Many of the remaining plaintiffs have filed complaints that allege acts of misrepresentation or negligence by former IndyMac Bank employees relative to the amount of FDIC insurance available for the plaintiffs' accounts. The FDIC asserts that "even allegations about errors by IndyMac Bank are aimed at obtaining the remaining portion of Plaintiffs' uninsured deposits," and that these claims can therefore "be litigated by the FDIC in its Corporate capacity without requiring Plaintiffs to proceed through the receivership's claims process." (*Id.* at 2-3.) It cites no authority supporting this view.

The complaints filed by IndyMac depositors – many of whom are proceeding *pro se* – do not precisely outline the legal theories asserted or types of damages sought. While some plaintiffs may seek only to have the court review the FDIC's deposit insurance determination, many appear to assert that, in deciding to deposit funds in the bank, they relied on misrepresentations by IndyMac employees regarding the amount of FDIC insurance coverage available for their accounts, or that IndyMac employees negligently completed paperwork related to the accounts that caused the depositors to lose insurance coverage to which they would otherwise have been entitled. While ultimately these plaintiffs seek to recover amounts that the FDIC has declined to insure, they complain of acts or omissions by the failed institution, and seek to recover from the assets of the institution under tort theories that would appear properly directed to the FDIC in its capacity as receiver for IndyMac. If this characterization of their claims is correct, plaintiffs' claims *must* proceed through the administrative claims process set forth in FIRREA. See 12 U.S.C. § 1821(d)(3)-(8), (d)(13)(D)(i)-(ii).

Although the FDIC is vested with statutory and regulatory authority to manage the receivership, the court is concerned that the type of notice the FDIC intends to send to depositors

detail the rules that govern administrative review of such claims and that provide for a stay of federal court litigation until such review is concluded, the parties are urged to stipulate to a stay if a proof of claim has been filed or is filed at some point in the future.

The FDIC also argues that it is entitled to a mandatory 90-day stay under 12 U.S.C. § 1821(d)(12)(B). The FDIC was appointed the receiver for IndyMac more than 90 days ago, however.[26] Therefore, § 1821(d)(12) is inapplicable. *Praxis Properties*, 947 F.2d at 71.

In addition to these statutory provisions, "[a] district court has inherent power to control the disposition of the causes on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254-55 (1936 ); see *Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 878 n. 6 (1998) (quoting *Landis*); *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (same). As a result, it has discretion to stay proceedings pending before it. See *Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1077 (3d Cir. 1983) (stating that the authority to stay proceedings derives from the power of every court to manage the cases on its docket and ensure a fair and efficient adjudication of the matters at hand); *Mediterranean Enters. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983). In exercising such discretion, the court "must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254-55.

Courts consider a variety of factors in deciding whether a stay is appropriate: (1) the benefits to the court of a stay; (2) the prejudice to the plaintiff if a stay is granted; and (3) the prejudice to the defendant if a stay is not granted. See *Schwartz v. Upper Deck Co.*, 967 F.Supp. 405, 415 (S.D. Cal. 1997) (citing *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990)); see also *CMAX, Inc.*, 300 F.2d at 268 ("Where it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed. Among these competing interests are the possible damage which may result

---

may cause plaintiffs who have cognizable administrative claims to forego filing those claims and potentially lose rights they might otherwise be able to assert.

[26]See OTS order (appointing FDIC as receiver for IndyMac as of July 11, 2008).

from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay" (citation omitted)).

The FDIC contends that a stay is necessary to facilitate coordination of the many cases filed in this district following IndyMac's failure. It asserts that staying the various actions will facilitate adjudication of the cases and result in greater judicial economy benefitting the court and all parties. The FDIC was appointed receiver for IndyMac in July, and the pending actions were, for the most part, filed starting in late August and early September. The FDIC does not explain what activities it would undertake if the action were stayed for three months that would permit better and more efficient management of this and other cases. Additionally, expeditious resolution is warranted to ensure that plaintiffs and other IndyMac depositors know the outcome of their claims. As a result, the court declines to exercise its inherent authority to order a stay.

### III. CONCLUSION

For the reasons stated, the court grants the FDIC's motion to substitute into this action in place of IndyMac and to dismiss IFSB. It denies the FDIC's motion for a stay. Plaintiffs are directed to effect service on the FDIC immediately in accordance with the instructions set forth in this order.

DATED: November 24, 2008

_____
MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE