UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALMA M. CAMERINI AND EUGENE J. CAMERINI,<br><br>          Plaintiffs,<br><br>vs.<br><br>FDIC INDYMAC FEDERAL BANK F.S.B.; INDYMAC BANK et al.,<br><br>          Defendants. | CASE NO. 08-06047 MMM (JWJx)<br><br>ORDER DENYING FDIC'S MOTION TO DISMISS PORTIONS OF PLAINTIFFS' COMPLAINT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES AS MOOT |

On July 11, 2008, the Office of Thrift Supervision ("OTS") closed IndyMac Bank and appointed the Federal Deposit Insurance Corporation ("FDIC") as the bank's receiver pursuant to 12 U.S.C. § 1821(c)(2)(A). The FDIC made deposit insurance determinations for accounts held at IndyMac and notified depositors of the determinations via letter. Some depositors, including plaintiffs, have since filed actions in this district challenging the FDIC's deposit insurance determinations and/or alleging wrongful acts by IndyMac Bank or its former employees. The FDIC moves to dismiss those portions of plaintiffs' complaint that contain claims based on purported misrepresentations or errors made by IndyMac Bank prior to its July 11 closing. Specifically, the FDIC contends that the court lacks jurisdiction to adjudicate claims seeking payment from the assets of a failed depository institution prior to the exhaustion of the administrative claims process set forth in the Financial Institutions Reform, Recovery and

Enforcement Act of 1989 ("FIRREA").[1]  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the court finds that this matter is appropriate for decision without oral argument.  The hearing scheduled for March 16, 2009 is vacated and taken off calendar.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 16, 2008, Alma and Eugene Camerini filed a complaint against FDIC IndyMac Federal Bank FSB and IndyMac Bank.[2]  Plaintiffs allege that on March 7, 2008, they opened a CD account at IndyMac's Northridge branch with a deposit of $200,000.00.[3]  Plaintiffs assert that the account was to be a joint account held in the names of Eugene and Alma Camerini, with their son, Keith Camerini, named as beneficiary.[4]  They further contend that on April 18, 2008, Eugene Camerini returned to the Northridge IndyMac branch to open an additional CD account with a deposit of $100,000.00.[5]  The account was to be opened in Alma Camerini's name, with Eugene and Keith Camerini listed as beneficiaries.[6]  Plaintiffs allege that Paul Bantet opened the account and assured Camerini that the funds would be fully insured by the FDIC.[7]  Plaintiffs

---

[1] See Notice of Motion and Motion by Defendant Federal Deposit Insurance Corporation as Receiver for IndyMac Bank, F.S.B., to Dismiss Plaintiffs' Complaint for Lack of Jurisdiction; Memorandum of Points and Authorities in Support Thereof ("FDIC Motion"), Docket No. 23 (Feb. 10, 2009).  On February 26, 2009, the Camerinis opposed the FDIC's motion.  (See Opposition to Motion by Defendant Federal Deposit Insurance Corporation as Receiver to Dismiss Plaintiffs' Complaint for Lack of Jurisdiction ("Camerini Opposition"), Docket No. 28 (Feb. 26, 2009).)  The FDIC replied on March 6.  (See Reply in Support of Defendant Federal Deposit Insurance Corporation as Receiver's Motion to Dismiss Plaintiffs' Complaint for Lack of Jurisdiction ("FDIC Reply"), Docket No. 29 (Mar. 3, 2009).)

[2] See Complaint, Docket No. 1 (Sept. 16, 2008).

[3] *Id.* at 1.

[4] *Id.*

[5] *Id.* at 1-2.

[6] *Id.* at 2.

[7] *Id.*

2

state that they would not have deposited the additional $100,000.00 had they not received this assurance.[8]

On July 21, 2008, the FDIC notified plaintiffs that they would receive a receiver's certificate in the amount of $53,527.17.[9]  The letter stated:

> "If you have uninsured deposits, as established by the FDIC's insurance determination, you automatically have a claim for such funds.  **In the event you disagree with the FDIC's determination with respect to your uninsured deposits, you may seek a review of the FDIC's determination in the United States District Court for the federal judicial district where the principal place of business of the Failed Institution [IndyMac] was located.  You must request this review no later than 60 days after the date of this letter.**"[10]

On July 30, 2008, the Camerinis received a dividend distribution check from the FDIC in the amount of $26,763.59.[11]

Plaintiffs allege that they became aware that their $100,000.00 CD was not fully FDIC-insured only after visiting the Northridge IndyMac branch on September 3, 2008.[12]  Shortly thereafter, plaintiffs filed this action.  Plaintiffs maintain that they relied in good faith on the

---

[8]*Id.*

[9]"Notice of Allowance of Claim," letter from the FDIC to Alma and Eugene Camerini, July 21, 2008, attached to Docket No. 16 (Nov. 17, 2008).

[10]*Id.* (emphasis original).

[11]Complaint at 2.  The Camerinis did not immediately cash this check because they were uncertain whether it should be included on their 2008 income tax return.  (*Id.*)

[12]*Id.* at 3 ("On September 3, 2008 . . . we went to the Indymac bank in Northridge . . . We spoke to Vita Owezzarczak-Jay personally and I wanted to know why the FDIC had decided we were insured for [only] 53,000 dollars.  She said that if the additional 100,000 dollars had been written up differently we would have been fully insured.  Why wasn't it written differently when Paul Barlet . . . assured my husband that it was fully insured after he had checked with Vita on the day we opened the additional account?  Vita then called someone at the FDIC where she was told that since I had signed a signature card, she was not responsible for the uninsured account amount").

assurances of IndyMac representatives and that the full amount deposited was insured.[13]

On September 30, 2008, the FDIC sent the Camerinis a letter captioned "Notice to Discovered Creditor – Proof of Claim."[14] The letter informed the Camerinis that the FDIC had previously published a notice to IndyMac customers in the Los Angeles Times and the Wall Street Journal warning that claims against IndyMac had to be filed by the Claims Bar Date, October 14, 2008.[15] Although the claims bar date had not yet passed, the letter stated that it had.[16] The letter noted that the FDIC could consider late claims under certain circumstances,[17] and provided instructions for filing a late proof of claim.[18]

On October 28, 2008, the FDIC moved to be substituted for IndyMac as the real party in

---

[13] *Id*. at 3-4 ("We as depositors sincerely believe that when we put our trust and act in good faith with a financial institution we are entitled to be assured by the bank's agents that the FDIC insurance amount is fully guaranteed. It is their expertise that we are relying upon and if there are changes made from the original agreements, we should be given an opportunity to bring said accounts up to date").

[14] "Notice to Discovered Creditor – Proof of Claim," letter from the FDIC to Alma and Eugene Camerini, September 30, 2008, attached to Docket No. 16 (Nov. 17, 2008).

[15] *Id*.

[16] *Id*. ("Although the Claims Bar Date has passed . . .").

[17] *Id*. ("[U]nder federal law the [FDIC] may consider claims filed after the Claims Bar Date if: 1) the claimant did not receive notice of the appointment of the [FDIC as receiver] in time to file a claim, AND 2) the claim is filed in time to permit payment of the claim. 12 U.S.C. [§] 1821(d)(5)(C). Nothing in this letter is intended to imply that the [FDIC] has extended the Claims Bar Date").

[18] *Id*. ("However, for the [FDIC] to consider your claim, you must prove to the [FDIC's] satisfaction that you did not have knowledge of the appointment of the [FDIC as receiver] in time to file a claim before the Claims Bar Date. Therefore, you must do ALL of the following: - Complete the enclosed Proof of Claim Form - Sign the Proof of Claim Form - Provide supporting documentation both regarding your claim and your lack of knowledge of the appointment of the [FDIC as receiver] (for example, evidence that someone was on active military duty stationed overseas at the time of the appointment of the [FDIC as receiver]). Please submit the properly completed Proof of Claim Form and the supporting documentation to the [FDIC] on or before **December 29, 2008**. You must return the properly filed Proof of Claim Form, along with the supporting documentation, to the following address . . .").

interest, and to stay the action for 180 days. The court granted the FDIC's motion to substitute on November 24, but denied the motion to stay, as there was no evidence that plaintiffs had filed a proof of claim seeking FDIC review of IndyMac's alleged acts or omissions.[19]

The deadline for filing late proofs of claim was December 28, 2008. The Camerinis did not file a proof of claim by that date.

## II. DISCUSSION

### A. Legal Standard Governing Judicial Review of Claims Arising Out of the IndyMac's Failure

In the wake of IndyMac's collapse, there are at least two types of claims depositors can assert against the FDIC. First, depositors can dispute the FDIC's deposit insurance determination respecting their IndyMac account(s). In reviewing such a decision, the court is limited by statute to examining whether the determination was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. See 12 U.S.C. § 1821(f)(4) ("A final determination made by the [FDIC] regarding any claim for insurance coverage shall be a final agency action reviewable in accordance with [5 U.S.C. § 706], by the United States district court for the Federal judicial district where the principal place of business of the depository institution is located"); 5 U.S.C. § 706 ("To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall – . . . (2) hold unlawful and set aside agency action, findings, and conclusions found to be – (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. . .").

Depositors may also have claims related to acts or omissions by IndyMac or its employees that occurred *before* the bank's failure, and that relate to the classification and insurance eligibility of their deposits. To assert this type of claim, the depositor must *first* exhaust the administrative

---

[19]See Order Granting FDIC's Motion to Substitute Into Action as a Party and to Dismiss FDIC IndyMac Federal Bank F.S.B.; Denying Motion to Stay, Docket No. 19 (Nov. 24, 2008).

claims procedure set forth in the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. §§ 1821(d)(3) - (8). Specifically, individuals wishing to assert that IndyMac or former IndyMac employees made errors in opening or classifying their accounts must file a proof of claim *with the FDIC* within a specified period of time. Once a proof of claim is filed, the FDIC has 180 days to allow or disallow the claim, and notify the claimant of its decision. See 12 U.S.C. § 1821(d)(5)(A)(i) ("Before the end of the 180-day period beginning on the date any claim against a depository institution is filed with the Corporation as receiver, the Corporation shall determine whether to allow or disallow the claim and shall notify the claimant of any determination with respect to such claim").

A federal district court has no jurisdiction to adjudicate claims alleging acts or omissions by the failed bank until depositors complete the administrative claims procedure. See 12 U.S.C. § 1821(d)(13)(D) ("Except as otherwise provided in this subsection, no court shall have jurisdiction over – (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver, including assets which the [FDIC] may acquire from itself as such receiver; or (ii) any claim relating to any act or omission of such institution or the [FDIC] as receiver"); see also, e.g., *Feigel v. FDIC*, 935 F.Supp. 1090, 1096 (S.D. Cal. 1996) ("FIRREA has been interpreted by the Ninth Circuit as requiring parties to exhaust administrative remedies prior to filing or refiling claims in district court. See *Intercontinental Travel Marketing, Inc. v. FDIC*, 45 F.3d 1278, 1282 (9th Cir. 1994) ('*ITM*') (no jurisdiction exists if a claimant does not exhaust FIRREA's administrative remedies) (citing *Henderson v. Bank of New England*, 986 F.2d 319, 320-21 (9th Cir.) cert. denied, 510 U.S. 995 (1993)). Failure to timely exhaust administrative remedies results in the loss of jurisdiction over certain claims which otherwise could be raised in district court. Thus, the Ninth Circuit has noted that a district court losses jurisdiction if 'the claimant fails to file a timely administrative claim.' *ITM*, 45 F.3d at 1284").

**B.    Whether or Not Certain Allegations Must be Dismissed for Failure to Exhaust**

As noted, the Camerinis have not completed the administrative claims procedure required to assert claims that IndyMac or former IndyMac employees erred in structuring their accounts

6

prior to the bank's July 2008 failure. The FDIC argues that, to the extent plaintiffs "complain of acts or omissions by the failed institution, and seek to recover from the assets of the institution under tort theories that would appear properly directed to the FDIC in its capacity as receiver for IndyMac," their claims must be dismissed for failure to exhaust administrative remedies.[20]

In a document styled "opposition" to the FDIC's motion, the Camerinis state "that in their complaint . . . they never intended to imply or state that they were asking the court to rule on any claim against IndyMac Thrift Two. The Plaintiffs simply were seeking a review of the FDIC determination with respect to what were called uninsured deposits."[21] The Camerinis clarify that they "only wanted to take advantage of the offer made by the FDIC Division of Resolutions and Receivership . . . to request a review of the FDIC Determination in respect to uninsured deposits and nothing else. The Plaintiffs did not seek or imply that they wanted the Court to adjudicate any monetary claims against IndyMac Bank. [T]he Court does not lack jurisdiction on something it was not asked to do."[22]

Given these statements, and the fact that the Camerinis did not file proofs of claim to initiate an administrative claims procedure, the court concludes that the complaint seeks only one type of relief, namely, judicial review of the FDIC's deposit insurance determination respecting their IndyMac accounts. Accordingly, the Camerinis' decision not to pursue the administrative claims procedure does not affect the court's jurisdiction to adjudicate their claim. Given the Camerinis' clarification of the relief sought, the court denies the FDIC's motion to dismiss

---

[20]FDIC Motion at 4 (quotation omitted). The FDIC notes that the Camerinis "drafted and submitted their Complaint without the benefit of counsel," and that as a consequence "the legal theories on which Plaintiff rest their claims are less than apparent." (*Id.* n. 1.) The FDIC states that "[i]n an effort to accommodate Plaintiffs, the FDIC is concurrently filing an Answer should Plaintiffs' Complaint be read as merely a challenge of the FDIC's insurance determinations respecting their IndyMac accounts, and not as a claim against IndyMac for erroneously structuring Plaintiffs' IndyMac accounts thereby depriving Plaintiffs of the desired level of insurance coverage." (*Id.*)

[21]Camerini Opposition at 3.

[22]*Id.* at 4.

7

portions of their complaint as moot.

### III.  CONCLUSION

For the reasons stated, the court denies the FDIC's motion to dismiss portions of the Camerinis' complaint as moot. Because the Camerinis have clarified their intention to pursue only judicial review of the FDIC's deposit insurance determination regarding their former IndyMac accounts, their decision not to file administrative claims does not affect the court's jurisdiction to adjudicate their claim.

DATED: March 11, 209

                                                  MARGARET M. MORROW
                                          UNITED STATES DISTRICT JUDGE