1  SCOTT H. CHRISTENSEN, admitted *pro hac vice*
   HUGHES HUBBARD & REED LLP
2  1775 I Street, N.W.
   Washington, D.C. 20006-2401
3  Telephone: (202) 721-4600
   Facsimile: (202) 721-4646
4  Email: christen@hugheshubbard.com

5  RITA M. HAEUSLER, State Bar No. 110574
   ALEX E. SPJUTE, State Bar No. 229796
6  HUGHES HUBBARD & REED LLP
   350 South Grand Avenue, 36th Floor
7  Los Angeles, California 90071-3442
   Telephone: (213) 613-2800
8  Facsimile: (213) 613-2950
   Email: haeusler@hugheshubbard.com

9
   Attorneys for Defendant Federal
10 Deposit Insurance Corporation

11
                    **UNITED STATES DISTRICT COURT**
12                  **CENTRAL DISTRICT OF CALIFORNIA**

13
   ALMA M. CAMERINI AND                )  Case No. 08-CV-6047 MMM (JWJx)
14 EUGENE J. CAMERINI,                  )
                                        )  [Assigned to Hon. Margaret M. Morrow]
15              Plaintiffs,             )
                                        )  **DEFENDANT FEDERAL DEPOSIT**
16         v.                           )  **INSURANCE CORPORATION'S**
                                        )  **OPENING TRIAL BRIEF**
17 FEDERAL DEPOSIT INSURANCE            )
   CORPORATION,                         )
18                                      )
                Defendant.              )
19 _____)

20         Defendant Federal Deposit Insurance Corporation ("FDIC"), respectfully

21 submits this Opening Trial Brief, pursuant to the Court's order of June 9, 2009

22 (Docket Entry 38).

23                          **FACTUAL BACKGROUND**

24         On July 11, 2008, the Office of Thrift Supervision ("OTS") closed

25 IndyMac Bank, F.S.B. ("IndyMac Bank") and appointed the FDIC as its Receiver

26 ("FDIC Receiver"). The FDIC Receiver accepted the appointment pursuant to 12

27 U.S.C. § 1821(c)(2)(A). Upon being appointed, the FDIC Receiver succeeded to "all

28 rights, titles, powers and privileges" of IndyMac Bank and may "take over the assets

                                        1

1  of and operate" the failed bank. *Id.* §§ 1821(d)(2)(A)(i), 1821(d)(2)(B)(i). These
2  powers and duties of the FDIC Receiver include the resolution of all outstanding
3  claims against IndyMac Bank. *See id.* § 1821(d)(3).

4        Upon the closure of IndyMac Bank, the FDIC, acting in its Corporate
5  capacity, determined the amount of insurance applicable to each depositor account at
6  IndyMac Bank and made payments from the Deposit Insurance Fund into depositor
7  accounts consistent with the insurance determinations. *See generally* 12 U.S.C.
8  §§ 1821(a)(4)(B), (f)(1). The FDIC Receiver sent depositors Receivership Certificates
9  for any uninsured deposits. (*See, e.g.*, Declaration of Jared R. Brown Attaching
10 Administrative Record ("Brown Decl.") ¶ 10 & Ex. B (appended hereto).) In
11 addition, the FDIC estimated that the liquidation value of IndyMac Bank's assets
12 would result in uninsured depositors receiving a dividend equal to 50% of their
13 uninsured deposits. (*See, e.g., id.* ¶ 11.) As a result, depositors received an advance
14 dividend of 50% of the amount on their receivership certificates. (*See id.*)

15       Plaintiffs Alma M. Camerini and Eugene J. Camerini assert that they
16 opened a CD Totten trust account in the amount of $200,000 at IndyMac Bank on
17 March 7, 2008. (*See* Compl. at 1-2.) Plaintiffs also assert that they subsequently
18 deposited an additional $100,000 in a new account at IndyMac Bank and allegedly
19 were misinformed by an IndyMac Bank employee that the $100,000 deposit was
20 insured by the FDIC. (*Id.*) Plaintiffs, however, signed and approved the structuring
21 of their deposits with IndyMac Bank at the time the accounts were created. (*See, e.g.*,
22 Signature Card attached to Plaintiffs' Opposition to Motion to Dismiss (Docket
23 Entry 28 at Page 9 of 10), attached as Exhibit A to the Request for Judicial Notice
24 filed herewith.)

25       After IndyMac Bank closed, the FDIC reviewed the ownership and
26 amounts reflected in Plaintiffs' IndyMac Bank deposit account records and
27 determined that all but $53,527.17 of the amounts reflected in Plaintiffs' deposit
28 account records was insured. (Brown Decl. ¶ 8.) On July 21, 2008, Plaintiffs were

1  then issued a receivership certificate in the amount of $53,527.17 for the uninsured

2  amount of their deposits (*id.* ¶ 10), and a subsequent 50% dividend distribution check

3  on the receivership certificate in the amount of $26,763.59 (*id.* ¶ 10).  Plaintiffs now

4  seek to have all of the account totals reflected on their IndyMac Bank deposit account

5  records as of July 11, 2008 redetermined as fully insured and seek a cash payment

6  from the FDIC in the amount of $26,763.59.

**ARGUMENT**

I.    STANDARD OF REVIEW

A final determination of the FDIC "regarding any claim for insurance

coverage [is] a final agency action reviewable in accordance with chapter 7 of

Title 5."  12 U.S.C. § 1821(f)(4).  The Administrative Procedure Act thus provides the

standard of review in this case, namely whether the FDIC's action was "arbitrary,

capricious, an abuse of discretion or otherwise not in accordance with law."  5 U.S.C.

§ 706(2)(A).  A decision is arbitrary or capricious if the FDIC

> 'has relied on factors which Congress has not intended it to
> consider, entirely failed to consider an important aspect of
> the problem, offered an explanation for its decision that runs
> counter to the evidence before the agency, or is so
> implausible that it could not be ascribed to a difference in
> view or the product of agency expertise.'

*O'Keeffe's, Inc. v. U.S. Consumer Product Safety Commission*, 92 F.3d 940, 942 (9th

Cir. 1996) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463

U.S. 29, 43 (1983)); *see also Metro County Title, Inc. v. FDIC*, 13 F.3d 883, 886 (5th

Cir. 1994) ("The FDIC is accorded special deference in the interpretation of its own

regulations and the statutes it enforces.").

II.    THE FDIC PROPERLY DETERMINED
       PLAINTIFFS' DEPOSIT INSURANCE

When determining the insurance coverage for Plaintiffs' accounts, the

FDIC is entitled to rely on the account records of IndyMac Bank at the time it closed.

Except in limited circumstances that do not apply here,

3

> in determining the amount of insurance available to each depositor, the FDIC shall presume that deposited funds are actually owned in the manner indicated on the deposit account records of the insured depository institution. If the FDIC, in its sole discretion, determines that the deposit account records of the insured depository institution are clear and unambiguous, those records shall be considered binding on the depositor, and the FDIC shall consider no other records on the manner in which the funds are owned.

12 C.F.R. § 330.5(a)(1) (2008); *see also Villafane-Neriz v. FDIC*, 75 F.3d 727, 731-32 (1st Cir. 1996) (holding that the FDIC "is entitled to rely exclusively on the account records of the failed institution"). If the bank records are clear and unambiguous as to the ownership of a depositor's accounts, the FDIC may rely on them even if the records reflect a mistake or unauthorized activity. *See Raine v. Reed*, 14 F.3d 280, 283-84 (5th Cir. 1994) (noting that "[e]ven where the bank itself has committed a mistake" the FDIC may rely on the clear records to determine if a deposit is insured); *In re Collins Securities Corp.*, 998 F.2d 551, 555 (8th Cir. 1993) (the FDIC can rely on bank records, even if they contain a mistake, because "[d]eposit insurance protects depositors from loss due to the bank's insolvency, not loss from the bank's pre-insolvency mistake"); *see also Villafane-Neriz*, 75 F.3d at 733 (collecting cases).

Here, the bank records are clear and unambiguous, as set forth in the administrative record provided to Plaintiffs. When IndyMac Bank closed on July 11, 2008, there were two accounts bearing Plaintiffs' names. (Brown Decl. ¶ 2 & Ex. A.) Account No. XXXXXX8917[1] was titled in the name of Alma Camerini and Eugene Camerini ITF (*i.e.*, "in trust for") Keith Camerini with deposits totaling $203,053.25. (*Id.*) Account No. XXXXXX8689 was titled in the name of Alma Camerini ITF Eugene Camerini and Keith Camerini with deposits totaling $100,947.85. (*Id.*)

Both accounts were informal revocable trust accounts. Any deposit account that indicates an intention that the funds will pass to one or more named beneficiaries upon the death of the owner is a revocable trust account. *See* 12 C.F.R.

---

[1]   The FDIC has omitted all but the last four digits of the account numbers to protect the personal information of the accountholders.

§ 330.10. Informal revocable trust accounts, commonly known as "payable on death" accounts, "in trust for" accounts, or "Totten trust" accounts, are created when the account owner signs an agreement, usually part of the bank's signature card, stating that the funds are payable to one or more beneficiaries upon the owner's death. *See id.* At the time IndyMac Bank closed, informal trust accounts were insured for $100,000 per owner for each beneficiary if all of the following conditions were met:

> a.    The account title must include commonly accepted terms such as "payable on death," "in trust for," "as trustee for" or similar language to indicate the existence of a trust relationship. These terms may be abbreviated as "POD," "ITF," or "ATF". *See* 12 C.F.R. § 330.10(b).
>
> b.    The beneficiaries must be identified by name in the deposit account records of the bank. *See* 12 C.F.R. § 330.10(b).
>
> c.    The beneficiaries must be the owner's spouse, children, grandchildren, parents or siblings. A beneficiary that meets this requirement is called a "qualifying beneficiary." *See* 12 C.F.R. § 330.10(a).
>
> d.    When a revocable trust (either informal or formal) is established by more than one owner and held for the benefit of others, some or all of whom are qualifying beneficiaries, then the respective interests of each owner held for the benefit of each qualifying beneficiary are separately insured up to the insurance limit. *See* 12 C.F.R. § 330.10(d). The FDIC presumes that the interests of the beneficiaries are equal unless otherwise stated in the bank's deposit account records. *See* FDIC Advisory Opinion, "Question Regarding Deposit Insurance for A 'Spousal Revocable Living Trust,'" (Sept. 12, 2005).

(*See* Brown Decl. ¶ 3.) In addition, when an informal revocable trust is established with more than one beneficiary, some or all of whom are qualifying beneficiaries, because each beneficiary is equally entitled to the funds in the accounts, the FDIC divides the funds in the account by the number of beneficiaries to determine how much insurance coverage the owner is entitled to for each beneficiary. *See* 12 C.F.R. § 330.10(c) (discussing examples).

Deposit insurance coverage for revocable trust accounts is based on each owner's trust relationship with each qualifying beneficiary. (Brown Decl. ¶ 5.) While

DEFENDANT FDIC'S OPENING TRIAL BRIEF

the trust owner is the insured party, insurance coverage is provided for the interests of each beneficiary of the account up to $100,000 for each beneficiary. *See* 12 C.F.R. § 330.10(a) (2008). The relationship between Alma Camerini as owner and Keith Camerini as beneficiary was insured up to $100,000. *See id*. But across all accounts at IndyMac Bank, Alma Camerini held a total of $152,000.55 with Keith Camerini as the beneficiary, which is half of Account No. 8917 and half of Account No. 8689. (Brown Decl. ¶ 9.) The portion of the Plaintiffs' deposit accounts attributed to that trust relationship thus exceeded the deposit insurance limits by $52,000.55. (*Id*.) The relationship between Alma Camerini as owner and Eugene Camerini as beneficiary was insured up to $100,000, *see* 12 C.F.R. § 330.10(a), but across all accounts at IndyMac Bank, Alma Camerini held a total of $50,473.93 for that relationship, which is half of Account No. 8689 (Brown Decl. ¶ 9). The amount attributed to that trust relationship was fully insured. (*Id*.) Finally, the relationship between Eugene Camerini as owner and Keith Camerini as beneficiary was insured up to $100,000. *See* 12 C.F.R. § 330.10(a). Eugene Camerini held $101,526.62 for that relationship across all accounts at IndyMac Bank, which is half of Account No. 8689. (Brown Decl. ¶ 9.) The amount attributed to that relationship exceeded the deposit insurance limits by $1,526.62. (*Id*.) As a result a total of $53,527.17 of the Camerinis' two accounts exceeded the deposit insurance limits. (*Id*.)

| Trust Relationship | Account No. 8917 | Account No. 8689 | Total | Uninsured Deposits |
|---|---|---|---|---|
| Alma Camerini ITF Keith Camerini | $101,526.63 | $50,473.92 | $152,000.55 | $52,000.55 |
| Alma Camerini ITF Eugene Camerini | | $50,473.93 | $50,473.93 | $0 |
| Eugene Camerini ITF Keith Camerini | $101,526.62 | | $101,526.62 | $1,526.62 |
| Total of Uninsured Deposits | | | | $53,527.17 |

(*Id*.)

1        On July 21, 2008, the FDIC sent Alma Camerini and Eugene Camerini a

2   Notice of Allowance of Claim ("Notice") and Receivership Certificate in the amount

3   of $53,527.17.  (Brown Decl. ¶ 10 & Ex. B.)  This Notice and Receivership Certificate

4   informed them that the FDIC had deemed a portion of the accounts uninsured.  (*Id.*)

5   When IndyMac Bank closed the FDIC calculated that the ultimate resolution of

6   IndyMac Bank would result in a recovery of approximately 50% of the uninsured

7   deposits of IndyMac Bank.  (*Id.* ¶ 11.)  Based upon that estimate, an advance dividend

8   in that amount was paid to the uninsured depositors.  (*Id.*)  Alma Camerini and

9   Eugene Camerini received a 50% dividend on their uninsured claim in the amount of

10   $26,763.59.  (*Id.*)

11        The FDIC's final deposit insurance determination regarding the

12   Camerini's accounts was thus in accordance with law and supported by the evidence

13   upon which the FDIC must rely.  *See generally* 5 U.S.C. § 706(2)(A); *O'Keeffe's,*

14   *Inc.*, 92 F.3d at 942.

## CONCLUSION

16        For the reasons stated above, judgment should be entered in favor of the

17   FDIC.

18   Dated:  July 6, 2009          HUGHES HUBBARD & REED LLP

20                  By:

21                      Scott H. Christensen

22                  Attorneys for Defendant Federal

                       Deposit Insurance Corporation

DEFENDANT FDIC'S OPENING TRIAL BRIEF

**ADMINISTRATIVE RECORD**

1 | SCOTT H. CHRISTENSEN, admitted *pro hac vice*
HUGHES HUBBARD & REED LLP
2 | 1775 I Street, N.W.
Washington, D.C. 20006-2401
3 | Telephone: (202) 721-4600
Facsimile: (202) 721-4646
4 | Email: christen@hugheshubbard.com

5 | RITA M. HAEUSLER, State Bar No. 110574
ALEX E. SPJUTE, State Bar No. 229796
6 | HUGHES HUBBARD & REED LLP
350 South Grand Avenue, 36th Floor
7 | Los Angeles, California 90071-3442
Telephone: (213) 613-2800
8 | Facsimile: (213) 613-2950
Email: haeusler@hugheshubbard.com

9 |
Attorneys for Defendant Federal
10 | Deposit Insurance Corporation

11 |
## UNITED STATES DISTRICT COURT
12 | ## CENTRAL DISTRICT OF CALIFORNIA

13 | ALMA M. CAMERINI AND EUGENE ) Case No. 08-CV-6047 MMM(JWJx)
14 | J. CAMERINI, )
) [Assigned to Hon. Margaret M. Morrow]
15 | Plaintiffs, )
) **DECLARATION OF JARED R.**
16 | v. ) **BROWN ATTACHING**
) **ADMINISTRATIVE RECORD**
17 | FEDERAL DEPOSIT INSURANCE )
CORPORATION, ) Complaint Filed: September 16, 2008
18 | )
Defendant. )
19 | _____ )

20 |

21 |     I, Jared R. Brown, hereby declare as follows:

22 |     1.     I am a Financial Institution Specialist within the Division of

23 | Supervision and Consumer Protection at the Federal Deposit Insurance Corporation

24 | ("FDIC"). I have been employed in this position since July 24, 2006. I have personal

25 | knowledge of the information contained in this declaration and, if called as a witness,

26 | I could and would competently testify thereto.

27 |     2.     On July 11, 2008, the Office of Thrift Supervision closed IndyMac

28 | Bank F.S.B. ("IndyMac Bank") and appointed the FDIC as Receiver for IndyMac

1
DECLARATION OF JARED R. BROWN

1  Bank ("FDIC Receiver").  The FDIC tasked me with the review of deposit insurance

2  coverage and claims arising out of the failure of IndyMac Bank.  Among the accounts

3  I reviewed were the accounts belonging to Plaintiffs Alma Camerini and Eugene

4  Camerini.  When IndyMac Bank closed, there was one account titled in the name of

5  Alma Camerini and Eugene Camerini ITF (*i.e.,* "in trust for") Keith Camerini with

6  deposits totaling $203,053.25, and another account titled in the name of Alma

7  Camerini ITF Eugene Camerini and Keith Camerini with deposits totaling

8  $100,947.85.  The accounts[1] I reviewed were:

9          XXXXXX8917        $203,053.25

10         XXXXXX8689        $100,947.85

11      3.     These accounts are classified as informal revocable trust accounts.

12 Any deposit account that indicates an intention that the funds will pass to one or more

13 named beneficiaries upon the death of the owner is a revocable trust account.  *See* 12

14 C.F.R. § 330.10.  Informal revocable trust accounts, commonly known as "payable on

15 death" accounts, "in trust for" accounts, or "Totten trust" accounts, are created when

16 the account owner signs an agreement, usually part of the bank's signature card,

17 stating that the funds are payable to one or more beneficiaries upon the owner's death.

18 At the time IndyMac Bank closed, informal trust accounts were insured for $100,000

19 per owner for each beneficiary if all of the following conditions were met:

20     a.    The account title must include commonly accepted

21 terms such as "payable on death," "in trust for," "as trustee for" or similar language to indicate the existence of a trust

22 relationship.  These terms may be abbreviated as "POD," "ITF," or "ATF".  *See* 12 C.F.R. § 330.10(b).

23     b.    The beneficiaries must be identified by name in the

24 deposit account records of the bank.  *See* 12 C.F.R. § 330.10(b).

25     c.    The beneficiaries must be the owner's spouse,

26 children, grandchildren, parents or siblings.  A beneficiary

27
28

---

[1]  I have omitted all but the last four digits of the account numbers to protect the personal information of the accountholders.

IndyMac.2.doc

that meets this requirement is called a "qualifying beneficiary." *See* 12 C.F.R. § 330.10(a).

    d.    When a revocable trust (either informal or formal) is established by more than one owner and held for the benefit of others, some or all of whom are qualifying beneficiaries, then the respective interests of each owner held for the benefit of each qualifying beneficiary are separately insured up to the insurance limit. *See* 12 C.F.R. § 330.10(d). The FDIC presumes that the interests of the beneficiaries are equal unless otherwise stated in the bank's deposit account records. *See* FDIC Advisory Opinion, "Question Regarding Deposit Insurance for A 'Spousal Revocable Living Trust,'" (Sept. 12, 2005).

    4.    I made the insurance determination for Plaintiffs' accounts on July 13, 2008. The insurance determination was based on account information contained in the Receivership Liability System ("RLS") records. A true and correct copy of the RLS records are attached hereto as Exhibit A.

    5.    Based on the information provided in the RLS records I was able to determine the amount of deposit insurance coverage for both accounts. Deposit insurance coverage for revocable trust accounts is based on each owner's trust relationship with each qualifying beneficiary. While the trust owner is the insured party, coverage is provided for the interests of each beneficiary of the account up to $100,000 for each beneficiary. *See* 12 C.F.R. § 330.10(a).

    6.    The account ending in 8917 had two owners (Alma Camerini and Eugene Camerini) and one beneficiary (Keith Camerini). The relationship between Alma Camerini as owner and Keith Camerini as beneficiary was insured up to $100,000. Likewise, the relationship between Eugene Camerini as owner and Keith Camerini as beneficiary was insured up to $100,000. As a result, this account was insured up to $200,000.

Alma Camerini → Keith Camerini = $100,000 maximum insured.

Eugene Camerini → Keith Camerini = $100,000 maximum insured.

Because the account held $203,053.25, the uninsured portion was $3,053.25.

DECLARATION OF JARED R. BROWN

IndyMac.2.doc

7.    The account ending in 8689 had one owner (Alma Camerini) and two beneficiaries (Eugene Camerini and Keith Camerini).  Because each beneficiary is equally entitled to the funds in the accounts, the FDIC divides the funds in the account by the number of beneficiaries to determine how much insurance coverage the owner is entitled to for each beneficiary.  *See* 12 C.F.R. § 330.10(c) (discussing examples). The relationship between Alma Camerini as owner and Eugene Camerini as beneficiary was insured up to $50,473.93, which is half of the funds on deposit because there are two beneficiaries.  Because this amount does not exceed $100,000 and because there are no other accounts with this owner/beneficiary relationship, the $50,473.93 was fully insured.  The relationship between Alma Camerini as owner and Keith Camerini as beneficiary, however, is not insured because the insurance for that relationship was exhausted in the account ending in 8917.  As a result, this account was insured up to $50,473.93.

Alma Camerini → Eugene Camerini = $50,473.93 ($100,974.85 ÷ 2)

Alma Camerini → Keith Camerini = $0.00 because Alma Camerini and Keith Camerini have a previously established ITF relationship under the account ending in 8917, and their relationship has reached the maximum insured amount under that account.

Because the account held $100,974.85, the uninsured portion was $50,473.92.

8.    The total insured portion of the Camerini accounts is $253,473.93 ($100,000 + $100,000 + $54,473.93).  The total uninsured portion of the Camerini accounts is $53,527.17 ($3,053.25 + $50,473.92).

9.    Another way of understanding the total deposit insurance is by analyzing the amount of deposits by the relationships between each owner and each beneficiary across all accounts at IndyMac Bank.  The relationship between Alma Camerini as owner and Keith Camerini as beneficiary was insured up to $100,000. But across all accounts at IndyMac Bank, Alma Camerini held a total of $152,000.55 with Keith Camerini as the beneficiary, which is half of Account No. 8917 and half of

4

IndyMac.2.doc

Account No. 8689. The funds for that trust relationship thus exceeded the deposit insurance limits by $52,000.55. The relationship between Alma Camerini as owner and Eugene Camerini as beneficiary was insured up to $100,000, but across all accounts at IndyMac Bank, Alma Camerini held a total of $50,473.93 for that relationship, which is half of Account No. 8689. The funds for that trust relationship were fully insured. Finally, the relationship between Eugene Camerini as owner and Keith Camerini as beneficiary was insured up to $100,000. Eugene Camerini held $101,526.62 for that relationship across all accounts at IndyMac Bank, which is half of Account No. 8689. The funds for that relationship exceeded the deposit insurance limits by $1,526.62. The $52,000.55 and $1,526.62 add up to the total of $53,527.17 discussed in paragraph 8.

| Trust Relationship | Account No. 8917 | Account No. 8689 | Total | Uninsured Deposits |
|---|---|---|---|---|
| Alma Camerini ITF Keith Camerini | $101,526.63 | $50,473.92 | $152,000.55 | $52,000.55 |
| Alma Camerini ITF Eugene Camerini | | $50,473.93 | $50,473.93 | $0 |
| Eugene Camerini ITF Keith Camerini | $101,526.62 | | $101,526.62 | $1,526.62 |
| Total of Uninsured Deposits | | | | $53,527.17 |

10.     On July 21, 2008, the FDIC sent Alma Camerini and Eugene Camerini a Notice of Allowance of Claim ("Notice") and Receivership Certificate in the amount of $53,527.17. This Notice informed them that the FDIC had deemed a portion of the accounts uninsured. A true and correct copy of the Notice and Receivership Certificate is attached hereto as Exhibit B.

11.     When IndyMac Bank closed the FDIC calculated that the ultimate resolution of IndyMac Bank would result in a recovery of approximately 50% of the uninsured deposits of IndyMac Bank. Based upon that estimate, an advance dividend in that amount was paid to the uninsured depositors. Alma Camerini and Eugene

DECLARATION OF JARED R. BROWN

1  Camerini received a 50% dividend on their uninsured claim in the amount of

2  $26,763.59.

3       I declare under penalty of perjury that the foregoing is true and correct

4  and that this declaration was executed at Danville, Arkansas on May 8, 2009.

5

6                      Jared R. Brown

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF JARED R. BROWN

IndyMac 2.doc

.

# EXHIBIT A

RLST1261
Print Date: 07/15/2008
Print Time: 03:33:44PM

REDACTED

**XX/PH WORKSHEET**
INSTITUTION: 1007 - INDYMAC BANK, F.S.B.
EXTENDED FAMILY: 12059
**GROUP # 270480**
OWNERSHIP TYPE: SINGLE
HOLD FLAGS: PH

ACCOUNT NAME: ALMA CAMERINI, ITF EUGENE CAMERINI, KEITH CAME...
REDACTED

| ACCOUNT NAME | BRANCH NUMBER | ACCOUNT NUMBER | CLAIM TYPE | ORIGINAL BALANCE | | INSURED FUNDS | | | UNINSURED/FUNDS ON HOLD | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | PRINCIPAL | INTEREST | BALANCE | PRINCIPAL | INTEREST | BALANCE |
| EUGENE CAMERINI, ALMA CAMERINI, ITF KEITH C/ | 221 | REDACTED 8917-02 | CDS | 203,053.25 $ | | 0.00 $ | 0.00 $ | 0.00 $ | 202,784.19 $ | 269.06 $ | 203,053.25 |
| ALMA CAMERINI, ITF EUGENE CAMERINI, KEITH CAME... | 221 | REDACTED 8689-02 | CDS | 100,947.85 $ | | 100,000.00 $ | 0.00 $ | 100,000.00 $ | 823.11 $ | 123.74 $ | 947.85 |
| **TOTAL:** | | | | 304,001.10 $ | | 100,000.00 $ | 0.00 $ | 100,000.00 $ | 203,608.30 $ | 392.80 $ | 204,001.10 |

Shortcut Determination
D1 = 150,473.93
XS = 53,527.17

ALL "DI"

| OWNERSHIP TYPE | PROCESSING CODES | ACCOUNT NUMBER | PRINCIPAL | INTEREST | TOTAL INSURED |
|---|---|---|---|---|---|
| | D1 | REDACTED 8917-02 | 149,257.02 | 269.06 | 149,526.08 |
| | D1 | REDACTED 8689-02 | 824.11 | 123.74 | 947.85 |
| | XS | REDACTED 8917-02 | 53,527.17 | | |
| | | | | TOTALS | 150,473.93 |

ALL "XS"

New Group

| | TOTAL UNINSURED |
|---|---|
| | |
| | 53,527.17 |
| | 53,527.17 |

204,001.10

Determination Made By/Date:
REDACTED 7/14/08
Scared Block
REDACTED 7/14/08
REDACTED Review/Date
Input into RLS By/Date:
REDACTED 7/14/08

RLS Processing Codes:
AH - Asset Hold                R1 - Returned Item
BK - Bookkeeping Adjustment    OS - Offset
CA - Cash Application          SD - Second Deposits
DA - Determined Insured        TF - Transfer From
DF - Due From FDIC             TT - Transfer To
DT - Due To FDIC               UF - Uncollected Funds (UAC)
RH - Future Hold               XS - Determined Excess

Name on RC:
Tax ID:
New Address:
City, State, ZIP, Country

Page 7348



# EXHIBIT B

# FDIC

**Federal Deposit Insurance Corporation**
1601 Bryan Street, Dallas, TX 75201

Division of Resolutions and Receiverships

July 21, 2008

ALMA CAMERINI, EUGENE CAMERINI
REDACTED

SUBJECT:    10007 – IndyMac Bank, F.S.B.
Pasadena, CA – In Receivership
**NOTICE OF ALLOWANCE OF CLAIM**

Dear Claimant:

On July 11, 2008 (the "Closing Date"), the IndyMac Bank, F.S.B., 888 East Walnut Street, Pasadena, CA, 91101 (the "Failed Institution") was closed by the Office of Thrift Supervision, and the Federal Deposit Insurance Corporation (the "FDIC") was appointed Receiver (the "Receiver").

Enclosed you will find a Receiver's Certificate in the amount of $53,527.17. The enclosed Receivership Certificate represents a formal record of your claim as allowed. As the FDIC acting as Receiver liquidates the assets of the Failed Institution, you may periodically receive payments on your claim through dividends. The Receiver pays dividends according to the priorities established by applicable law.

The Receiver will send your dividends to the address shown on your Receivership Certificate, please notify this office if your address changes.

If you have uninsured deposits, as established by the FDIC's insurance determination, you automatically have a claim for such funds. In the event you disagree with the FDIC's determination with respect to your uninsured deposits, you may seek a review of the FDIC's determination in the United States District Court for the federal judicial district where the principal place of business of the Failed Institution was located. You must request this review no later than 60 days after the date of this letter.

If you have any questions, please contact Claims Agent at (972) 761-2112.

Sincerely,

Claims Agent
Claims Department

RLS7213

Case 2:08-cv-06047-MMM-JWJ    Document 36    Filed 05/11/2009    Page 12 of 15

10007 - IndyMac Bank, F.S.B.        Pasadena, CA
(Name and Location of Bank)

### RECEIVERSHIP CERTIFICATE OF PROOF OF CLAIM - NO.6064

July 21, 2008

THIS IS TO CERTIFY THAT ALMA CAMERINI, EUGENE CAMERINI          REDACTED
                                                    (Name)              (Tax No.)
Of ____REDACTED____
                                                    (Address)
has made satisfactory proof that   ALMA CAMERINI, EUGENE CAMERINI

is a creditor of the 10007 - IndyMac Bank, F.S.B.                      in the amount of

Fifty three thousand five hundred twenty seven and  seventeen /100

_____ Dollars upon the following

claim to wit:

| | | | | FDIC USE ONLY | |
| CLAIM NUMBERS | ACCOUNT NUMBERS | AMOUNTS | DPC#/TAX CODE | | AMOUNTS |
| --- | --- | --- | --- | --- | --- |
| 100241964-000 | REDACTED 8917-02 | $53,527.17 | 901.0 | | $53,527.17 |
| 100241965-000 | REDACTED 8689-02 | $0.00 | 901.1 | | $0.00 |
| TOTALS | | $53,527.17 | TOTALS | | $53,527.17 |

Balance due in excess of any amount paid by and assigned the Federal Deposit Insurance Corporation
and said creditor or the lawful assignee of this claim will alone be entitled to any distributions made
hereon.

No assignment of this claim, or any portion thereof, will be recognized as to any distribution unless written
notice of assignment has been given to the Receiver and accepted by it and entered thereon before such
distribution has been paid.  Please complete the section below only if you are assigning your claim to
another person or entity.

Claimant should notify the Receiver promptly of any change in claimant's address.

FEDERAL DEPOSIT INSURANCE CORPORATION, RECEIVER

                    By _____
                                                    (Receiver)

ASSIGNMENT OF RECEIVER'S CERTIFICATE        Date: _____, _____

For value received claimant herein named hereby transfers and assigns the within claim to:

_____
                                (Name and Address)

_____        _____
        (Original Claimant Signature)                        (Date Signed)

FDIC accepted/entered on Date: _____, _____    by _____

RLS7213                                                                    2

Case 2:08-cv-06047-MMM-JWJ    Document 38    Filed 05/11/2009    Page 13 of 13

**FDIC**

**Federal Deposit Insurance Corporation**
1601 Bryan Street, Dallas, TX 75201

Division of Resolutions and Receiverships

July 21, 2008

IndyMac Federal Bank, FSB
888 East Walnut Street
Pasadena, CA 91101

SUBJECT:    10007–IndyMac Bank, F.S.B.
            Pasadena, CA – In Receivership
            **ACCOUNT HOLD RELEASE**

Dear          :

Reference is made to the following account(s), which was (were) transferred to your bank in the initial wire with an Account Hold in place:

| Account Name | Account Type & Number | Initial Hold Amount |
|---|---|---|
| ALMA CAMERINI, EUGENE CAMERINI | CDSREDACTED8917-02 | $203,053.25 |
| | | $203,053.25 |

The FDIC hereby authorizes you to release the amount of $149,526.08. The remaining amount of $53,527.17 is to be held until further notice.

Please acknowledge receipt of this request by signing below and returning this letter to the FDIC.

Sincerely,


Claims Agent
Claims Department


Acknowledged By: _____          Date: _____

RLS7234

Case 2:08-cv-06047-MMM-JWJ    Document 39    Filed 05/11/2009    Page 14 of 15

# FDIC

**Federal Deposit Insurance Corporation**
1601 Bryan Street, Dallas, TX 75201

Division of Resolutions and Receiverships

July 21, 2008

IndyMac Federal Bank, FSB
888 East Walnut Street
Pasadena, CA 91101

SUBJECT:     10007–IndyMac Bank, F.S.B.
             Pasadena, CA – In Receivership
             **ACCOUNT HOLD RELEASE**

Dear           :

Reference is made to the following account(s), which was (were) transferred to your bank in the initial
wire with an Account Hold in place:

| Account Name | Account Type & Number | Initial Hold Amount |
|---|---|---|
| ALMA CAMERINI, EUGENE CAMERINI | CDS REDACTED 8689-02 | $947.85 |
| | | $947.85 |

The FDIC hereby authorizes you to release the amount of $947.85. The remaining amount of
$0.00 is to be held until further notice.

Please acknowledge receipt of this request by signing below and returning this letter to the FDIC.

Sincerely,


Claims Agent
Claims Department


Acknowledged By: _____     Date: _____


RLS7234

## DECLARATION OF SERVICE BY MAIL

The undersigned declares:

I am, and was at all times herein mentioned, a citizen of the United States, a resident of the County of Los Angeles, over the age of 18 years and not a party to this action or proceeding. My business address is 350 South Grand Avenue, 36th Floor, Los Angeles, California 90071-3442. I am employed in the office of a member of the bar of this Court, at whose direction the service described herein was made.

I am readily familiar with the business practice at my place of business for collection and processing of correspondence for mailing with the U.S. Postal Service. Correspondence so collected and processed is deposited with the U.S. Postal Service that same day in the ordinary course of business. On May 11, 2009, at my place of business, I placed a true and correct copy of the foregoing **DECLARATION OF JARED R. BROWN ATTACHING ADMINISTRATIVE RECORD** for collection and mailing on that date with the U.S. Postal Service, following ordinary business practice, in sealed envelopes, with postage fully prepaid, addressed as follows:

Alma and Eugene Camerini
9447 Whitaker Avenue
Northridge, CA 91343

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed in Los Angeles, California, on May 11, 2009.

Catherine Ryan

1

PROOF OF SERVICE

60661176_1.DOC

1

## DECLARATION OF SERVICE BY MAIL

2

The undersigned declares:

3

I am, and was at all times herein mentioned, a citizen of the United

4

States, a resident of the County of Los Angeles, over the age of 18 years and not a

5

party to this action or proceeding.  My business address is 350 South Grand

6

Avenue, 36th Floor, Los Angeles, California 90071-3442.  I am employed in the

7

office of a member of the bar of this Court, at whose direction the service described

8

herein was made.

9

I am readily familiar with the business practice at my place of business

10

for collection and processing of correspondence for mailing with the U.S. Postal

11

Service.  Correspondence so collected and processed is deposited with the U.S. Postal

12

Service that same day in the ordinary course of business.  On July 6, 2009, at my place

13

of business, I placed a true and correct copy of the foregoing **DEFENDANT**

14

**FEDERAL DEPOSIT INSURANCE CORPORATION'S OPENING TRIAL**

15

**BRIEF** for collection and mailing on that date with the U.S. Postal Service, following

16

ordinary business practice, in sealed envelopes, with postage fully prepaid, addressed

17

as follows:

18

19

Alma and Eugene Camerini
9447 Whitaker Avenue
Northridge, CA 91343

20

21

I declare under penalty of perjury under the laws of the United States of

22

America that the foregoing is true and correct.  Executed in Los Angeles, California,

23

on July 6, 2009.

24

25

Catherine Ryan

26

27

28

1

PROOF OF SERVICE

60711263_1.DOC